UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JEFFREY S. SMITH and<br>KATHRYN N. SMITH, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) CAUSE NO. 3:18-CV-561-PPS/MGG<br>) |
| SUSAN E. HEARN, | )<br>) |
| Defendant. | ) |

# OPINION AND ORDER

Jeffrey and Kathryn Smith purchased a lake home from Susan Hearn, and it flooded a couple of months later. In this action based on fraud, the Smiths contend that Hearn lied to them in a number of ways during the sales process. The alleged misrepresentations include statements made in the written Sales Disclosure Form, where, for example, Hearn checked "do not know" for "have there been or are there any hazardous conditions on the property, such as . . . mold." [DE 52-1 at 61.] Another alleged misrepresentation was made by Hearn to her own realtor (later relayed to the Smiths) that the home had not flooded in approximately ten years. [*Id.* at 48-50, 117.] In fact, the home had indeed flooded multiple times during Hearn's ownership, including in 2011, 2012, and 2013. And during the remediation process, the Smiths say they also learned the house had extensive preexisting structural damage and mold from the previous flooding. All of which prompted this lawsuit for which both parties now seek summary judgment.

The complaint contains two counts: one count for fraud and one for statutory deception under the Indiana Crime Victims Relief Act, Ind. Code § 35-43-5-1 *et seq.* I have reviewed the parties' cross-motions for summary judgment (Hearn moved for summary judgment on all claims, and the Smiths moved for partial summary judgment as to liability on Count I for the written misrepresentations in the sales disclosure form and liability on Count II), as well as the hefty materials filed in connection with them. After a thorough review, I am convinced that there are several genuine issues of material fact making summary judgment inappropriate for either party.

## Discussion

### Motion to Strike

Before addressing the motions for summary judgment, I will first turn my attention to Hearn's motion to strike or disregard the Smith's statement of facts. [DE 66.] Hearn filed a twenty-five page motion to strike, contesting a whole slew of things in Plaintiff's statement of material facts, including that some of the Smiths' arguments are not supported by facts, some of the "facts" are really conclusions of law, some facts are not supported by deposition testimony, and that certain evidence lacks foundation.

Motions to strike are heavily disfavored and usually only granted in circumstances where the contested evidence causes prejudice to the moving party. *Kuntzman v. Wal-Mart*, 673 F.Supp.2d 690, 695 (N.D. Ind. 2009); *Gaskin v. Sharp Elec. Corp.*, No. 2:05-CV-303, 2007 WL 2228594, at *1 (N.D. Ind. July 30, 2007). Furthermore, it is the function of this Court, with or without a motion to strike, to carefully review the

evidence and to eliminate from consideration any argument, conclusions, and assertions unsupported by the documented evidence of record offered in support of the statement. *See, e.g., S.E.C. v. KPMG LLP*, 412 F.Supp.2d 349, 392 (S.D.N.Y. 2006); *Sullivan v. Henry Smid Plumbing & Heating Co.*, Inc., No. 04 C 5167, 05 C 2253, 2006 WL 980740, at *2 n.2 (N.D. Ill. Apr. 10, 2016); *Tibbetts v. RadioShack Corp.*, No. 03 C 2249, 2004 WL 2203418, at *16 (N.D. Ill. Sept. 29, 2004); *Rosado v. Taylor*, 324 F.Supp.2d 917, 920 n.1 (N.D. Ind. 2004).

In this case, I have sifted through the voluminous evidence and considered it under the applicable federal rules, giving each piece the credit to which it is due. Accordingly, the motion to strike [DE 66] is denied.

## Motions for Summary Judgment

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On cross motions for summary judgment, I need to assess whether each movant has satisfied the requirements of Rule 56. *See Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005); *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 504 n. 4 (7th Cir. 2008). "As with any summary judgment motion, [the Court] review[s] cross-motions for summary judgment construing all facts, and drawing all reasonable

inferences from those facts, in favor of the non-moving party." *Laskin v. Siegel*, 728 F.3d 731, 734 (7th Cir. 2013) (internal quotation marks omitted).

Because this case is so clearly destined for a jury, I am not going to recite all of the extensive facts. Instead, I will just highlight those essential to this opinion. The Smiths entered into a real estate purchase agreement with Hearn on September 17, 2017, for the purchase of real estate located at 36 EMS T30A Lane, Leesburg, which sits on the lower basin of Lake Tippecanoe in Kosciusko County, Indiana. Hearn owned the house for about eleven or twelve years. [Hearn Dep., DE 52-1 at 3.] The home flooded several times during Hearn's ownership because of rising lake levels; these flood events happened in 2009, 2011, 2012, 2013. [*Id.* at 4-5, 9, 19, 21, 31, 34-35.] Water also entered the home as a result of a hose split in July 2016. [*Id.* at 58.]

Hearn completed and signed the "Seller's Residential Real Estate Sales Disclosure" form when she put her vacation lake house on the market. In response to the question "[h]ave there been or are there any hazardous conditions on the property, such as . . . . mold" she checked the box "do not know." [*Id.* at 52, 61.] She also checked "do not know" when asked "[a]re there any foundation problems with the structure" and "[a]re there any structural problems with the building?" [DE 52-1 at 61.] Hearn checked "no" to the question "[a]re there moisture and/or water problems in the basement, crawl space area, or any other area?" and "no" when asked "[i]s there any damage due to wind, flood, termites or rodents?" [*Id.*] She checked "yes" when asked if the property was in a flood plain and if she currently paid for flood insurance. [*Id.*]

4

Hearn retained a contractor, Jeff Virgil of Quality Restoration, to perform remediation and water removal after flooding events in 2009 and 2011. [Hearn Dep., DE 52-1 at 4-6.] Hearn testified that when they opened the walls after the 2009 flood, she knew there was mold in the home and saw mold with her own eyes. [*Id.* at 4-5, 7.] She also saw rotten studs, and rotten wood at that time. [*Id.* at 12.] In 2009, after Virgil performed his remediation, he conducted two mold tests in two rooms, which both indicated that no elevated mold levels were present in the air. [Virgil Dep., DE 41-12 at 66-68; DE 52-1 at 128-29, 138.] But Virgil later conceded that testing only the air may not pick up mold behind the walls. [DE 52-1 at 140.] Virgil did not conduct any other testing of mold in Hearn's house other than on this one occasion in 2009. [*Id.* at 145.]

Hearn also testified that after the 2011 flood, if Quality Restoration was in there and opened a wall, then yes, she would have been aware that there was mold in the home again. [DE 52-1 at 5-6.] In 2014, Quality Restoration remodeled the home, and during the remodel they opened the walls, and Hearn knew there was mold in the home in 2014. [*Id.* at 6-7.]

After another flood occurred in 2012, Hearn reached out to a different person named Doug Harvey with Coplen Construction. [DE 52-1 at 21-22.] When Harvey arrived at the home, there was water in the house, and as he surveyed the scene, he stepped into the kitchen area and promptly fell through the floor. [*Id.* at 148-51.] Harvey said he pointed out water damage to Hearn and mold and mildew that was between the slab and bottom of the substrate which was supporting the ceramic floor,

5

as well as by the fireplace. [*Id.* at 154, 159-60.] He also told her that if he could see mold in two places, "chances are it's throughout the home underneath this area that we could not see." [*Id.* at 165.] Harvey also observed structural problems including rotted out sill plates and rotted out studs, which he pointed out to Hearn. [*Id.* at 161-63.] When Hearn asked Harvey, "where do we go from here?" he answered that in his opinion, the house should be torn down and rebuilt with a higher foundation because it sits too low and there is damage to the plates. [*Id.* at 153.]

The home flooded again on April 26, 2013, due to rising lake water. [DE 52-1 at 19, 31.] Hearn could not recall any repair work being done after this flood other than having a family friend glue new tile to the slab. [*Id.* at 32-33, 38, 57.]

In 2014, Quality Restoration performed significant remodel work on the home including installing a new kitchen, new appliances, new cabinets, new bathrooms, new carpet, closet doors were cleaned with mildew remedies, and warped doors were replaced. [*Id.* at 38.] During the remodel, Quality Restoration opened some walls, and Hearn concedes that she knew there was mold in the home in 2014. [*Id.* at 6.] Virgil did perform dry downs, treated anything wet with an antimicrobial agent, and repaired any structural issues that he was aware of. [DE 41-12 at 24, 31, 40, 42, 50, 102, 122-23, 130-31, 108-09, 178, 180.] Virgil told Hearn the fireplace was sinking, and she had him use sleepers to create a level surface for the floor to sit upon. [DE 52-1 at 143-44.] If he found additional damage or work during the restoration project, Virgil brought it to Hearn's attention, and it was removed or repaired. [DE 41-2 at 113.] When asked

"[w]hen you finished with the work on this particular property in 2015, did you have a belief that there was hazardous mold in the property?" Virgil answered, "[n]o." [DE 41-12 at 110.]

In July 2016, a hose split or broke which caused some water to enter into the home. [DE 52-1 at 34-35.] On this occasion, Hearn hired a company to dry the carpet. [*Id.*]

During the sale, the Smiths were represented by real estate agent Vince Beasley, and Hearn was represented by real estate agent Mark Aker. Hearn told Aker when she hired him (about a year before the actual sale of the house), that the home had not flooded in approximately ten years. [*Id.* at 48-50, 56, 117.] Prior to the sale, Aker passed on this erroneous information to the Smith's agent, Beasley. [DE 52-1 at 170-73; DE 41-14 at 12-14.]

On September 17, 2017, the Smiths signed the Purchase Agreement to buy the home for $457,000, and reserved the right to inspect the home. [DE 41-3.] The Smiths hired Brick & Beam Home Inspections, LLC, who completed an inspection on the house and did a written report. [DE 41-15.] The report specifically stated that it did not address mold in the house. [*Id.*] The closing occurred on October 19, 2017.

Approximately 4 months after the Smiths purchased the house, in February 2018, the home experienced a severe flood due to extreme rains and elevated lake levels. Water remained in the home for thirteen days. [DE 41-9 at 26-28.] Mrs. Smith hired the same contractor that Hearn had repeatedly used, Virgil, to do water removal and

7

mitigation. [DE 52-1 at 183; DE 31-9 at 26.] During the remediation process, Virgil told Mrs. Smith that there were rotten studs, mold and drywall damage which were the result of multiple years of flooding. [DE 52-1 at 183-86.] Virgil also advised Mrs. Smith that she should not raise the foundation because there were rotten studs, a sunken-chimney and foundation issues. [*Id.* at 186-88.]

After the flood, the Smiths e-mailed Hearn. Richard Hearn (Susan Hearn's husband), e-mailed back, and one of the statements he made to the Smiths in the e-mail was: "[a]s we mentioned during the process, it had been nearly ten years since the house had flooded from water rising from the lake." [DE 51-3 at 3.]

The Smiths filed their complaint in state court on June 28, 2018, and the case was removed to me on the basis of diversity jurisdiction. The complaint states two claims against Hearn: (1) common-law fraud; and (2) statutory deception under Indiana's Crime Victims Relief Act. The Smiths and Hearn have both moved for summary judgment.

    A.    **Count One - Fraud**

Although fraud claims may be resolved by summary judgment, "as a general principle, questions of motive and intent are particularly inappropriate for summary adjudication" and "resolution by summary judgment of the issues raised by an allegation of fraud is often difficult or impossible." *P.H. Glatfelter Co. v. Voith, Inc.*, 784 F.2d 770, 774 (7th Cir. 1986) (internal quotation marks and citations omitted); *see also Lac du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wis., Inc.*, 991

F.2d 1249, 1258 (7th Cir. 1993) ("Due to the difficulty of proving a subjective state of mind, cases involving motivation and intent are usually not appropriate for summary judgment."). "As a general rule, a party's state of mind (such as knowledge or intent) is a question of fact for the factfinder, to be determined after trial." *Lorillard Tobacco Co., Inc. v. A & E Oil, Inc.*, 503 F.3d 588, 594 (7th Cir. 2007) (quotation omitted).

In Indiana, there is a statutory obligation for sellers of certain residential real estate to complete disclosure forms informing prospective buyers of certain types of defects in the property. Ind. Code § 32-21-5-10(a). Chapter 32-21-5 also provides that a seller is not liable for any error, inaccuracy, or omission on the sales disclosure form if the error, inaccuracy, or omission was not within the seller's actual knowledge. Ind. Code § 32-21-5-11(1). But a seller of a home "may be held liable for fraudulent misrepresentations made on the Sales Disclosure Form if the buyer can prove the seller's actual knowledge of the defect at the time the form is completed." *Hizer v. Holt*, 937 N.E.2d 1, 7-8 (Ind. Ct. App. 2010); *see also Johnson v. Wysocki*, 990 N.E.2d 456, 464 (Ind. 2013) ("*Wysocki I*") ("the General Assembly contemplated that sellers can be held liable for errors, inaccuracies, or omissions on the Sales Disclosure Form if the seller has actual knowledge of the defect.").

As the Supreme Court of Indiana has held, "the elements of [a fraud] claim when based on a Sales Disclosure Form distill down to (i) a false representation of past or existing facts on the Form, (ii) made with actual knowledge of its falsity, (iii) which proximately caused the complaining party's injury." *Wysocki v. Johnson*, 18 N.E.3d 600,

9

604 (Ind. 2014) ("*Wysocki II*").  Let's not beat around the bush; it is obvious that there are genuine issues of material fact as to whether Hearn had actual knowledge of several conditions of the house that she answered on the disclosure form at the time she completed the sales disclosure form including: (1) structural problems with the building; (2) foundation problems; (3) whether there had been or was hazardous conditions on the property such as mold; (4) whether there was moisture and/or water problems in any area; and (5) whether there was any damage due to flood.

While it is undisputed that Hearn knew the home previously contained mold, Hearn testified that she was never advised that it was a *hazardous condition*, and that she believed any problems had been remedied before the sale, which is why she marked "do not know" to the question "[h]ave there been or are there any hazardous conditions on the property, such as . . . mold" on the Sales Disclosure Form.  [DE 41-10 at 20-21, 49, 71, 73, 97, 132, 133-35.]  The only two mold tests ever done on the home had a negative result.  [Virgil Dep., DE 41-12 at 66-68, 145.]  Moreover, Hearn has a decent argument that when she checked the box "do not know" for hazardous conditions like mold, structural problems, moisture and/or water problems, and damage due to flood, this should have raised a red flag for the Smiths who should have followed up and asked additional probing questions on these topics before the sale.

Ultimately, neither side is entitled to summary judgment.  The jury is going to have to determine the extent of Hearn's knowledge about the mold, structural issues, and any damage due to flooding when she completed the Sales Disclosure Form, to

determine whether Hearn had actual knowledge of these defects and should have disclosed them. *See Verrall v. Machura*, 810 N.E.2d 1159, 1164 (Ind. Ct. App. 2004) (finding summary judgment inappropriate because question of fact "regarding [sellers'] knowledge of the extent of water leakage at the time the Disclosure Form was completed."); *Wise v. Hays*, 943 N.E.2d 835, 843 (Ind. Ct. App. 2011) (reversing summary judgment where the "evidence establishes a genuine issue of material fact as to whether [defendants] had actual knowledge of the structural problems with the residence at the time they completed the sales disclosure form."); *Hizer*, 937 N.E.2d at 6 ("[a] fact-finder is required to resolve the parties' differing versions of the truth at trial and summary judgment was properly denied on the issue of water seepage.").

With regard to the oral representation that Hearn made to her real estate agent, and that the agent passed on to the Smiths' real estate agent — i.e., that the home had not flooded in approximately ten years — that misrepresentation would be considered under the common law of fraud. That requires the Smiths to prove Hearn made: (1) a material misrepresentation of past or existing facts; (2) that was false, (3) that was made with knowledge or reckless ignorance of the falseness, (4) was relied upon by the Smiths; and (5) proximately caused injury to the Smiths. *Wysocki I*, 990 N.E.2d at 460-61. Again, there is a disputed issue of fact regarding knowledge, as Hearn testified she believed these statements were true when she made them to her realtor, and "at the time [s]he answered to the best of [her] ability." [DE 52-1 at 47-49.]

There is also a disputed question of fact as to whether the damage the Smiths

11

found after the 2018 flood is attributable to the previous flooding when the house was owned by Hearn, or was a result of water sitting in the house for 13 days after the 2018 flood. ACM Engineering, one of the Smiths' experts, found the presence of black mold was indicative of a chronic and/or reoccurring water origination source. [ACM Report at 29.] In contrast, Tim Eaton, Hearn's expert, believes there is no evidence that the home had mold in it prior to the 2018 flood which was after the sale. [Eaton Aff., DE 67-1 ¶¶ 18-21.] Again, the jury is going to have to decide who they believe.

> B. **Count II - Statutory Deception**

Count II asserts a criminal deception claim against Hearn under the Indiana Crime Victims Relief Act ("CVRA") and also survives the cross motions for summary judgment. That statute provides, in pertinent part, that deception occurs when a person "knowingly or intentionally makes a false or misleading written statement with intent to obtain property." Ind. Code § 35-43-5-3(a)(2). And a person who suffers a pecuniary loss as a result of this section is entitled to bring a civil action against the person who caused the loss for three times the actual damages of the person suffering the loss, as well as costs of the action and a reasonable attorney's fee. Ind. Code § 34-24-3-1.

Under the CVRA, a claimant may be entitled to treble damages under certain circumstances. In *Wysocki II*, the Supreme Court of Indiana clarified those situations that could lead to exemplary damages. *Wysocki II*, 18 N.E.3d 600 (Ind. 2014). The trial court still retains the discretion to award exemplary damages, but it must first determine the level of the defendant's culpability. The *Wysocki II* court emphasized,

"not every intentional tort is necessarily so heinous as to require exemplary damages," or "to warrant quasi-criminal CVRA liability at all." *Id.* at 606 (quotation marks and citation omitted). Rather, such liability is "a matter of the factfinder's discretionary judgment of whether the defendant is *criminally* culpable." *Id.* (emphasis in original). In other words, before a trial court can award exemplary damages (including treble damages) under the CVRA, there must be a finding that the defendant's actions were "so heinous as to require exemplary damages," or "warrant quasi-criminal CVRA liability." *Id.*

Hearn argues that there is no evidence of heinous or criminal conduct to permit the recovery of damages under the CVRA in this case, and this count should be dismissed. This may ultimately prove to be correct, but the conclusion is premature at this point. If the fact-finder was to determine that Hearn had actual knowledge of the defects in her home, and she intentionally lied for financial gain at the cost of the Smiths' potential health and/or enjoyment of the house, it could be appropriate to order Hearn to pay treble damages, costs, and attorney fees pursuant to the CVRA. *See Staggs v. Buxbaum*, 60 N.E.3d 238, 248 (Ind. Ct. App. 2016) (finding plaintiff acted in a heinous and criminally culpable manner when she lied on her sales disclosure form and made untrue representations about the house's septic system and basement moisture issues); *Wysocki II*, 18 N.E.3d at 605 ("[e]ven when a court awards compensatory damages under the CVRA, we have recognized that it is highly appropriate for the trial court to weigh any equities before deciding the amount, if any, owed as exemplary

13

damages"). Of course the Smiths will have to prove damages at trial, and that will also be the time to determine the nature and extent of Hearn's culpability, if any, and available damages.

## Conclusion

For all of these reasons, the cross motions for summary judgment [DE 40, 50] are DENIED. Additionally, the motion to strike [DE 66] is DENIED and the motion for leave to file additional affidavits [DE 78] is GRANTED.

**SO ORDERED**.

ENTERED: March 19, 2020.

/s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**